IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ODON BULAORO, an individual, ESPERANZA BULAORO, an individual,

    Plaintiffs,

  v.

ORO REAL INC., a California Corporation, CORNERSTONE TITLE COMPANY, a Business Entity, form unknown, WELLS FARGO BANK, N.A., CAL WESTERN RECONVEYANCE CORPORATION, a California Corporation, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware Corporation, and DOES 1 through 50, inclusive,

    Defendants.

No. C 11-03059 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

In this foreclosure dispute, two defendants move pursuant to FRCP 12(b)(6) to dismiss plaintiffs' complaint. For the following reasons, defendants' motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiffs' complaint alleges the following. In August 2006, plaintiffs purchased the subject property, located in San Jose, for $540,000. At the same time, plaintiffs entered into a loan agreement with defendant Oro Real, Inc., obtaining a mortgage loan for $432,000. The loan was secured by the property, and a first trust deed on the property held by Oro.

Plaintiffs allegedly executed a promissory note at the same time, but they have never been provided a copy of the promissory note or deed of trust. Plaintiffs were asked to sign other documents at the same time that were never explained to them. The purpose of entering into the agreement was for plaintiffs to eventually own the property, but they instead allegedly fell victim to predatory lending (Compl. ¶¶ 7, 17, 33, 39, 83–85).

Oro was the "original mortgage lender/table funder, servicer and nominee/beneficiary under the loan." Defendant Cornerstone Title Company was the original trustee for the loan. The deed of trust lists defendant Mortgage Electronic Registration Systems, Inc. as "acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument." After originating and funding the loan, Oro "assigned, sold, or transferred the mortgage loan" to defendant Wells Fargo Bank, N.A. (Compl. ¶¶ 8–10, 13).

The loan obtained from Oro was an "Option ARM (negative amortization) loan" with a pre-payment penalty. It also had a starting "teaser rate" interest of one percent. The loan was "underwritten without proper due diligence by [Oro] as evidenced by their failure to verify borrower's income utilizing signed IRS Income Tax Disclosure Form 4506T." Defendants also never provided plaintiffs with a Mortgage Loan Origination agreement or a California Insurance Disclosure. The loan was approved based on plaintiffs' stated income and "a medium to high risk credit score and a belief that the property would continue to increase in value." Oro qualified plaintiffs for a loan it knew or should have known plaintiffs could not qualify for or afford (Compl. ¶¶ 17, 34–35, 41, 50, 56).

Plaintiffs further allege that "Oro was paid Unearned fees, which were hidden . . . in the form of a Yield Spread Premium which increased the interest rate." The Yield Spread Premium was explained to plaintiffs as a "credit for closing costs." Oro also failed to provide a separate fee agreement regarding Yield Spread Premium, in order to properly disclose this fact to plaintiffs. (Compl. ¶¶ 51, 54).

"[T]he workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan" were ever explained to plaintiffs. This includes the interest rate, loan repayment terms, costs, fees, and the existence

of a yield spread premium in the loan contract. To the extent that the loan was drafted and explained, it was done in English instead of plaintiff's native language, Tagalog (Compl. ¶¶ 37–38, 87–88).

Defendants "intentionally concealed the negative implications of the loan they were offering," and as a result, plaintiffs "face the potential of losing their home to the very entity and entities who placed them in this position." To commence foreclosure, Wells Fargo filed a notice of default on the loan. Defendant Cal Western Reconveyance Corporation "is purported to be the agent for [Wells Fargo] and current trustee that helped facilitate the foreclosure action" on the property. Cal Western, as the agent for Wells Fargo, recorded a notice of default in June 2010 and a notice of trustee's sale in September 2010. Each defendant who has "participated in, been assigned or been transferred Rights or holds a position or Interest under this loan agreement . . . failed to perform their due diligence in investigating the legal requirements that this loan should have been processed within [sic]" (Compl. ¶¶ 10–12, 32, 48).

Plaintiffs have also "been attempting to engage in a Loan Modification program" with defendants Oro, Wells Fargo, and/or Cal Western. Plaintiffs performed all of the necessary requirements, but defendants have not offered a program plaintiffs can afford." In addition, plaintiffs allege that defendants failed to provide them with "written notice of the furnishing of negative credit information to consumer reporting agency after [defendants] furnished such negative credit information" about plaintiffs (Compl. ¶¶ 43, 61).

Plaintiffs, in pro per, commenced this action in state court in May 2011, and defendants thereafter removed it to federal court (Dkt. No. 1). Plaintiffs' complaint alleges the following claims for relief against all defendants: (1) declaratory relief; (2) injunctive relief; (3) determine the nature, extent, and validity of lien under California Commercial Code Section 9313; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of the Truth in Lending Act; (6) violation of California Civil Code Section 1916.7 10(c); (7) violation of California Civil Code Sections 1918.5–1921.1920; (8) violation of California Civil Code Section 1632; (9) violation of 12 Code of Federal Regulations Section 226.23(a)(3); (10) violation of 12 Code of Federal Regulations Section 3508.10; (11) violation of Fair

3

1 and Accurate Credit Transactions Act of 2003, Section 221(b); (12) rescission;
2 (13) misrepresentation and fraud; (14) unfair and deceptive acts and practices; (15) breach of
3 fiduciary duty; (16) unconscionability; (17) predatory lending; (18) trespass; (19) conversion;
4 (20) quiet title; (21) violation of the Real Estate Settlement Procedures Act; (22) violation
5 of California Civil Code Section 1916.7b(2); (23) violation of California Civil Code
6 Section 1916.7B; (24) violation of California Civil Code Section 2079.16; (25) violation of
7 California Civil Code Section 1916.7a(8); (26) unjust enrichment; (27) failure to modify loan;
8 (28) wrongful foreclosure; and (29) breach of contract.

Defendants Wells Fargo and MERS now move to dismiss all 29 of plaintiffs' claims for failure to state a claim. No other defendants joined this motion. This order follows full briefing and a hearing.

**ANALYSIS**

**1.     STANDARD OF REVIEW.**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that defendants are liable for the misconduct alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 129 S. Ct. at 1949–50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Dismissal is only proper if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

FRCP 9(b) requires that in all averments of fraud the circumstances constituting fraud must be stated with particularity. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. "Averments of fraud must be accompanied by 'the who, what,

4

when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). FRCP 9(b) serves to give defendants notice of the specific fraudulent conduct against which they must defend. *See Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).

### 2. REQUEST FOR JUDICIAL NOTICE.

Defendants request that judicial notice be taken of the following documents: (1) a deed of trust, recorded with the Santa Clara County Recorder's Office on August 31, 2006, as document number 19087420; (2) a deed of trust, recorded with the Santa Clara County Recorder's Office on August 31, 2006, as document number 19087421; (3) a notice of default, recorded with the Santa Clara County Recorder's Office on June 10, 2010, as document number 20738072; (4) an assignment of deed of trust, recorded with the Santa Clara County Recorder's Office on September 8, 2010, as document number 20860647; (5) a substitution of trustee recorded with the Santa Clara County Recorder's Office on September 8, 2010, as document number 20860648; (6) a notice of trustee's sale, recorded with the Santa Clara County Recorder's Office on September 17, 2010, as document number 20873853; (7) a notice of trustee's sale, recorded with the Santa Clara County Recorder's Office on March 18, 2011, as document number 21115972. Plaintiffs object that the documents do not satisfy the requirements of FRE 201. The documents, however, are matters of public record not generally subject to dispute. Judicial notice of these documents is appropriate under Federal Rule of Evidence 201. Defendants' request for judicial notice of these seven documents is **GRANTED**.

These documents show Cal Western recorded the notice of default against the property in June 2010. In September 2010, the lender's interest in the property was assigned to Wells Fargo and Wells Fargo recorded a substitution of trustee, naming Cal Western as the new trustee. Two notices of trustee's sales were recorded by Cal Western in September 2010 and March 2011, the later one listing April 11, 2011, as the date of sale. According to defendants, the sale did not take place at that time (Br. 1; RJN Exhs. 3–7).

5

### 3. CLAIMS FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF.

Plaintiffs' complaint seeks declaratory relief and injunctive relief. These claims are actually request for remedies — to weigh them, the court must look to the underlying claims. *See Boeing Co. v. Cascades Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000). Until plaintiff's claims are finally determined, it is impossible for this order to say that declaratory relief and injunctive relief will not be in order. Accordingly, defendants' motion to dismiss these claims is **DENIED**.

### 4. CLAIM TO DETERMINE THE NATURE, EXTENT, AND VALIDITY OF LIEN UNDER CALIFORNIA COMMERCIAL CODE SECTION 9313.

Plaintiffs allege that defendants violated Section 9313 because defendants did not "ever take actual possession of the original promissory note." When the deed of trust was transferred to Wells Fargo from Oro, "no trustee was a holder in due course, and did not deliver to [Oro] or any successor trustee the original promissory note" (Compl. ¶ 123). Section 9313, however, is part of the codification of UCC Article 9, which deals with security interests in personal property and fixtures. *See* Cal. Com. Code 9109(d)(11) ("This division does not apply to . . . : The creation or transfer of an interest in or lien on real property"). This section of law does not apply to plaintiffs' mortgage. *See, e.g.*, *Dorado v. Shea Homes Ltd. P'ship*, 1:11-CV-01027 OWW SKO, 2011 WL 3875626, at *5 (E.D. Cal. Aug. 31, 2011) (Wanger, J.). Defendant's motion to dismiss plaintiffs' third claim is therefore **GRANTED**.

### 5. CLAIMS FOR BREACH OF GOOF FAITH AND FAIR DEALING AND BREACH OF CONTRACT.

Plaintiffs allege that defendants breached the covenant of good faith and fair dealing by withholding disclosures, providing information in English instead of Tagalog, and placing plaintiffs in a loan for which they did not qualify (Compl. ¶ 130). Under California law, a claim for breach of the implied covenant under contract law is necessarily based on the existence of an underlying contractual relationship. The essence of the covenant is that no party to the contract will do anything which would deprive the others of the benefits of the contract. This duty, however, is "a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *McClain v. Octagon Plaza, LLC*, 159 Cal.

6

1  App. 4th 784, 799 (2008). Because plaintiffs' allegations stem from the formation and
2  negotiation of the loan before the contract was formed, their claim is insufficient.

3  Plaintiffs further allege that defendants breached the contract because "there was no
4  fair and reasonable consideration." The complaint also states that "[b]y reason of [defendants']
5  nondisclosure of the cognovit clauses, misrepresentation and lack of contractual consent in the
6  alleged contract, the contract is void" (Compl. ¶¶ 288, 290). Plaintiffs do not allege sufficient
7  facts to show a contract was breached by defendants. Plaintiffs instead assert facts attempting
8  to show that any contracts entered into with defendants are void for lack of consideration.
9  The facts as pled do not state a plausible claim for breach of contract.

10  Accordingly, defendants' motion to dismiss plaintiffs' fourth and twenty-ninth claims
11  for breach of the covenant of good faith and fair dealing and breach of contract is **GRANTED**.

12  **6. CLAIMS THAT ARISE OUT OF THE LOAN NEGOTIATION PROCESS.**

13  Plaintiffs allege sixteen claims based upon facts surrounding the loan negotiation process.
14  This includes claims five through twelve, fourteen, fifteen, seventeen, and twenty-one through
15  twenty-five. The facts forming the bases of these claims are as follows. Plaintiffs contend that
16  numerous mandatory disclosures that should have been made to them at the time they entered
17  into the loan agreement were not, including the terms of the loan, the interest rate, and the true
18  cost of the loan. Moreover, even when disclosures were made to plaintiffs, they allegedly were
19  not made in a clear way for them to understand and they were not made in the plaintiffs' native
20  language. Plaintiffs were also allegedly not provided copies of the documents describing their
21  loan as required. Essentially, plaintiffs allege facts to show that they were induced into getting
22  a loan they could not afford, informed that it was in their best interest, not made aware of the
23  material provisions of the loan, and provided with no documentation. Taking these allegations
24  as true, they fail to state a claim for relief against Wells Fargo and MERS, the moving
25  defendants.

26  Plaintiffs entered into a mortgage contract with Oro. Oro was the "original mortgage
27  lender/table funder, servicer and nominee/beneficiary under the loan" (Compl. ¶ 8). Oro was the
28  party responsible for any mandatory disclosures required by law and for explaining the loan to

7

plaintiffs. To the extent plaintiffs may have been misled regarding how the loan would benefit them, they spoke and contracted with Oro and not the moving defendants. Moreover, any failure to use the proper income statements to qualify plaintiffs for the loan would also be that of Oro. MERS was listed as the original beneficiary and Wells Fargo was an assignee of the lender's interest in the property. The moving defendants are thus not the entities responsible for many of the allegations contained in plaintiffs claims.

Plaintiffs contend that a conspiracy exists and all defendants are responsible for the acts of all other defendants. Not so. Plaintiffs did not plead facts sufficient to show that Wells Fargo and MERS were involved with the loan negotiation process or had any control over what would or would not be discussed with plaintiffs. Plaintiffs' conclusory conspiracy allegations are not enough. Plaintiffs also state for the first time in their opposition that a joint venture exists between defendants. Arguments made for the first time in opposition are not included when the sufficiency of the complaint is reviewed on a motion to dismiss.

Accordingly, the following claims are **DISMISSED**: (5) violation of TILA; (6) violation of California Civil Code Section 1916.7 10(c); (7) violation of California Civil Code Sections 1918.5–1921.1920; (8) violation of California Civil Code Section 1632; (9) violation of 12 Code of Federal Regulations Section 226.23(a)(3); (10) violation of 12 Code of Federal Regulations Section 3508.10; (11) violation of Fair and Accurate Credit Transactions Act of 2003, Section 221(b); (12) rescission; (14) unfair and deceptive acts and practices; (15) breach of fiduciary duty; (17) predatory lending; (21) violation of RESPA; (22) violation of California Civil Code Section 1916.7b(2); (23) violation of California Civil Code Section 1916.7B; (24) violation of California Civil Code Section 2079.16; and (25) violation of California Civil Code Section 1916.7a(8). Defendants' motion to dismiss these claims is **GRANTED**.

### 7. CLAIM FOR FRAUD.

Many of plaintiffs' allegations concerning fraud also arise out of the loan negotiation and signing process. Plaintiffs, however also allege that "during the life of the mortgage loan, [defendants] failed to properly credit payments made, incorrectly calculated interest on the accounts, and have failed to accurately debit fees." Plaintiffs also state that there was fraud and

deceit on the part of defendants in alleging that they had the right of foreclosure (Compl. ¶¶ 188, 191). Defendants argue that plaintiffs' fraud allegations are not pled with the required specificity under FRCP 9(b). This order agrees.

The elements of fraud are "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003). Plaintiffs are required to plead "the who, what, when, where, and how" of any misconduct alleged. Plaintiffs fail to meet this standard.

The allegations of a failure to properly credit payments do not specify which defendant purportedly failed to credit payments. Plaintiffs do not claim they were unable to determine which defendant did not credit their payments nor could they have because they were the ones sending the payments, so they must have known to whom the payments were sent. As to the right to foreclose, plaintiffs again fail to plead this claim with specificity. Plaintiffs do not explain how this claim applies to Wells Fargo or MERS. Due to these deficiencies, defendant's motion to dismiss plaintiffs' claim for fraud is **GRANTED**.

### 8. CLAIM FOR UNCONSCIONABILITY.

Plaintiffs allege a claim for unconscionability under UCC 2-3202. Aside from quoting the statute language, plaintiffs only state "based on the deception, unfair bargaining position, lack of adherence to the regulations, civil codes and federal standards," coupled with the windfall defendants received, the court could find the contract unconscionable (Compl. ¶ 210). Defendants move to dismiss plaintiffs' claim for unconscionability because it is a defense to contract formation and not a "cognizable cause of action" (Br. 9). This order agrees.

UCC 2-3202 is codified in California in Civil Code Section 1670.5. Section 1670.5 states:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

9

Section 1670.5, however, does not create an affirmative claim for unconscionability but merely codifies the defense of unconscionability. *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 766 (1989). Plaintiffs therefore state no claim for relief for unconscionability. Accordingly, defendants' motion to dismiss this claim is **GRANTED**.

### 9. CLAIM FOR TRESPASS.

Plaintiffs also allege a claim for trespass, stating that defendants have not taken the proper steps to effectuate a legal foreclosure on the property. Plaintiffs further explain (Compl. ¶ 222):

> On or about August 9, 2010 [defendants], attempted to force an illegal non-judicial sale of the Subject property and attempt to claim a right of entry to the Subject Property. [Plaintiffs] have not consented or provided authority to such an entry and dispute the [defendants] right. Any attempted or past entry has been accomplished against [plaintiffs'] will.

Defendants contend that this claim must be dismissed because it fails to allege each element required to establish a trespass. This order agrees.

The essence of the claim of trespass is an "unauthorized entry" onto the land of another. *Civic W. Corp. v. Zila Indus., Inc.*, 66 Cal. App. 3d 1, 16 (1977). Plaintiffs fail to allege that any unauthorized entry onto their property occurred. Plaintiffs only state that defendants "attempted to force an illegal non-judicial sale" and "attempt to claim a right of entry" to the property. Plaintiffs do not even allege sufficient facts to show any entry to their property occurred, let alone that it was not consensual. Thus, defendants' motion to dismiss plaintiffs' claim for trespassing is **GRANTED**.

### 10. CLAIM FOR CONVERSION.

Plaintiffs' nineteenth claim alleges conversion. Plaintiffs' contend (Compl. ¶¶ 229–30):

> On or about August 9, 2010, [defendants], attempted to force an illegal non-judicial sale of the Subject property by filing a Notice of Trustee's Sale, attempting to claim a right of entry to the Subject Property. Plaintiffs have not consented to such an entry and dispute the [defendants] right.
>
> The personal and real property located within the Subject Property has a value to [plaintiffs], both compensable and sentimental.

> [Defendant's] conduct will convert [plaintiffs'] personal and real property by virtue of their unlawful restrain upon locking the [plaintiffs] out of the Subject Property.

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Mendoza v. Rast Produce Co.*, 140 Cal. App. 4th 1395, 1404-05 (2006). "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." *Oakdale Vill. Group v. Fong*, 43 Cal. App. 4th 539, 544 (1996).

Plaintiffs fail to state a claim for conversion. The only actions of defendants that plaintiffs allege led to conversion are that the defendants "attempted to force an illegal non-judicial sale of the Subject property by filing a Notice of Trustee's Sale, attempting to claim a right of entry to the Subject Property." Taking these allegations as true, defendants attempted to force a sale, recorded a notice with the county, and attempted to claim a right of entry. Defendants actions do not constitute conversion of plaintiffs' real property.

Because this order finds that plaintiffs failed to plead sufficient facts to state a claim for conversion, it does not reach defendants' theory that conversion does not apply to real property. Defendants' motion to dismiss plaintiffs' claim for conversion is **GRANTED**.

### 11. CLAIM TO QUIET TITLE.

In their twentieth claim, plaintiffs "seek a declaration that the title to the Subject Property is vested in [plaintiffs] alone" (Compl. ¶ 238). The purpose of a quiet title action is to establish title against adverse claims to real property or any other interest therein. "[A] mortgagor of real property cannot, without paying his debt, quiet his title against the mortgagee." *Miller v. Provost*, 26 Cal. App. 4th 1703, 1707 (1994). "The cloud upon [one's] title persists until the debt is paid." *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974). Nowhere in the complaint or opposition did plaintiffs state that they are willing or able to make a tender of their debt. Plaintiffs failed to adequately allege compliance with this requirement, which is fatal to their

11

claim to quiet title. Accordingly, defendants' motion to dismiss their claim to quiet title is **GRANTED**.

### 12. CLAIM FOR UNJUST ENRICHMENT.

Plaintiffs assert a claim for unjust enrichment but fail to provide specific details regarding their theory of how the defendants were unjustly enriched. Plaintiffs allege that they entered into a deal with defendants whereby plaintiffs agreed to repay their loan and in turn expected fair dealings, disclosures and practices by defendants (Compl. ¶ 270-71). After stating facts about the expectations surrounding the agreement, plaintiffs then state (Compl. ¶ 273):

> A forced sale of the [plaintiffs'] home, and an allowance for [defendants] to recoup the extreme profits enjoyed by forcing Plaintiffs into an imbalance of principal to interest ratio, would be inequitable and unconscionable, while the [defendants] enjoy the benefit of the [plaintiffs'] actions without paying for their own breaches of the law and professional responsibilities.

Aside from this paragraph, plaintiffs provide no further details of their claim for unjust enrichment, nor do they address this claim in their opposition. They do incorporate the 268 previous paragraphs in the complaint into the unjust enrichment claim, but no further detail as to what facts comprise this claim is provided. This order finds that this claim fails to put defendants on notice as to what is being claimed. As such, defendants' motion to dismiss plaintiffs' claim for unjust enrichment is **GRANTED**.

### 13. CLAIM FOR FAILURE TO MODIFY LOAN.

In their twenty-seventh claim for relief, plaintiffs allege that defendants violated California Civil Code Section 2923.6 when they failed to modify plaintiffs' loan. Plaintiffs allegedly provided defendants with all requested documentation but defendants "made no attempts in good faith to provide [plaintiffs] with a meaningful and sustainable Loan Modification" (Compl. ¶ 275). Instead plaintiffs were allegedly strung along until their home was sold.

Section 2923.6 provides:

> (a) The Legislature finds and declares that any duty servicers may have to maximize net present value under their pooling and servicing agreement is owed to all parties in a loan pool, not to any particular parties, and that a servicer acts in the best interests of all

12

>
> parties if it agrees to or implements a loan modification or workout plan for which both of the following apply:
>
>> (1) The loan is in payment default, or payment default is reasonably foreseeable.
>>
>> (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recover through foreclosure on a net present value basis.
>
> (b) It is the intent of the Legislature that the mortgagee, beneficiary, or authorized agent offer the borrower a loan modification or workout plan if such a modification is consistent with its contractual or other authority.

Defendant, however, correctly notes that Section 2923.6 does not provide a private right of action (Br. 6). Although our court of appeals has not yet weighed in on this issue, district courts in this circuit have found "that the legislative history, intent, and plain language of [Section] 2923.6 makes it clear that servicers are not obligated to offer loan modifications to borrowers," and it does not provide a private claim for relief to borrowers. *Dizon v. Cal. Empire Bancorp, Inc.*, No. CV 09-5826 CAS AGRx, 2009 WL 3770695 (C.D. Cal. Nov. 9, 2009) (Snyder, J.); *see also*, *Farner v. Countrywide Home Loans*, No. 08CV2193 BTM AJB, 2009 WL 189025, at *2 (S.D. Cal. Jan. 26, 2009) (Moskowitz, J.).

Because the statute does not provide a private claim for plaintiffs, defendants' motion to dismiss their claim for failure to modify is **GRANTED**.

### 14. CLAIM FOR WRONGFUL FORECLOSURE.

Plaintiffs next allege a claim against defendants for wrongful foreclosure. The basis of the claim is that a June 2010 notice of default and a September 2010 notice of trustee's sale did not comply with California Civil Code Section 2923.5 (Compl. ¶¶ 282–83). Under Section 2923.5(b), "[a] notice of default . . . shall include a declaration that the mortgagee, beneficiary, or authorized agent has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required." Plaintiffs allege that the notices they received did not have the requisite documentation attached rendering the foreclosure wrongful and void.

Defendants now contend that plaintiffs' claim is time-barred under RESPA. Not so. Defendants argue that the statute of limitations should begin running from the time the loan was

consummated in September 2006. Plaintiffs, however, did not received the subject notices until 2010 and commenced this action in May 2011. Even if the one-year statute of limitations does apply to plaintiffs' claims as defendant contends, the first allegedly deficient notice was received by plaintiffs in June 2010, and this action was commenced in May 2011. Thus plaintiffs' claim for wrongful foreclosure is not barred by the statute of limitations.

Defendants' motion to dismiss plaintiffs' claim for wrongful foreclosure is **DENIED**.

## CONCLUSION

For the foregoing reasons, defendants' motion is **GRANTED IN PART AND DENIED IN PART**. With the exception of plaintiffs' first and second claims for declaratory and injunctive relief and twenty-eighth claim for wrongful foreclosure, plaintiffs claims against defendants Wells Fargo and MERS are **DISMISSED**.

As to any claims dismissed above, plaintiffs may seek leave to amend the complaint and will have **FOURTEEN CALENDAR DAYS** from the date of this order to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. A proposed amended complaint must be appended to the motion. The motion should clearly explain how the amendments to the complaint cure the deficiencies identified herein.

**IT IS SO ORDERED.**

Dated: December 19, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE